UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OHIO SECURITY INS. CO.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-628** |
| **HUDSON SPECIALTY INS CO.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Partial Summary Judgment** (Rec. Doc. 6) filed by defendant, Hudson Specialty Ins. Co., is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment** (Rec. Doc. 10) filed by plaintiff, Ohio Security Ins. Co., is **DENIED**.

### BACKGROUND

This matter arises from a dispute regarding the ranking of insurance policies applicable to coverage of an automobile accident on February 27, 2020. On that date, Barbie Ricouard was driving a 2018 Toyota Camry co-leased by the Cosse Law Firm ("Cosse Firm") and Irvy Cosse, with Jessica Cook riding as a passenger in the vehicle. Sarah Chatham allegedly rear-ended the Camry. Ricouard and Cook subsequently filed claims.

Chatham was insured by an automobile liability insurance policy with Progressive Insurance Company with liability limits of $15,000 per person and $30,000 per accident. The limits of this policy have been paid and are not at issue in this action.

As for the Camry, there are four insurance policies that the parties agree cover the accident. Progressive issued a personal auto liability policy to Irvy Cosse listing Ricouard as a

named driver and the Camry as a listed vehicle ("Progressive policy"). The Progressive policy had a combined single limit per accident of $500,000. The limits of this policy have been paid.

Hudson Specialty Insurance Company ("Hudson") issued a "Personal Umbrella Liability Policy" ("Hudson policy") to Irvy Cosse effective June 20, 2019 with uninsured motorist limits of $2,000,000. The policy lists Ricouard as a driver and the Camry as a vehicle. Ohio Security Insurance Company issued a "Commercial Protector Common Policy" to the Cosse Firm effective August 18, 2019 ("Ohio policy"). The policy included a "Hired Auto and Non-Owned Auto Liability" Endorsement and a "Louisiana Uninsured Motorist Coverage (Includes Underinsured Motorist) – Bodily Injury" Endorsement. The Hired Auto Endorsement extended the Uninsured Motorist Coverage to the Camry, with a limit of $2,000,000. Ohio also issued a "Commercial Umbrella Policy" also effective August 18, 2019, with $1,000,000 in uninsured motorist coverage ("Ohio Umbrella policy").

Ohio Security Insurance Company ("Ohio") filed its Complaint for Declaratory Judgment seeking a declaration of the priority ranking of the policies issued by Ohio and Hudson. In the instant cross-motions for partial summary judgment, Hudson seeks a declaration that the Ohio policy primes the Hudson policy and Ohio seeks a declaration that the Hudson policy primes the Ohio policy.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**Insurance Policy Interpretation**

Insurance policies are contracts, and courts must interpret them "by using the general rules of interpretation of contracts set forth in the Civil Code." Louisiana Ins. Guar. Ass'n v.

Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994). The court must ascertain the "parties' intent as reflected by the words in the policy . . . ." Id. "Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." Id.

**Louisiana's Anti-Stacking Provision & Anti-Stacking Exception**

"Stacking of [uninsured motorist] coverages occurs when the amount available under one policy is inadequate to satisfy the damages . . . and the same insured seeks to combine or stack one coverage on top of another for the same loss covered under multiple policies or under multiple coverages contained in a single policy." See Boullt v. State Farm Mut. Auto. Ins. Co., 752 So. 2d 739 (La. 1999). Louisiana law generally prohibits an injured claimant from "stacking" uninsured motorist ("UM") coverage. See LA. R.S. § 22:1295 ("anti-stacking statute"). However, the anti-stacking statute provides an exception where the injured party does not own the vehicle in which they were injured. In the instant case, neither of the injured parties, Ricouard or Cook, owned the Camry. Thus, the exception set forth in La. R.S. § 22:1295(1)(c) applies.

> That statute provides:
>
> [w]ith respect to other insurance available, . . . the following priorities of recovery under uninsured motorist coverage shall apply:
>
> (i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary.
>
> (ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. . . .

Id. Policies in the first category, (i), are referred to as "statutorily primary" while policies in the second category, (ii), are referred to as "statutorily excess." When more than one UM policy covers the vehicle for purposes of the statute, all such policies are primary. Hellmers v. Nicholas, 737 So. 2d 781, 784 (La. 4th Cir. 1999), writ denied, 740 So. 2d 1286 (La. 1999) In that event, the multiple statutorily primary policies are ranked according to whether they are "true primary" or "true excess." Lee v. USAA Cas. Ins. Co. of Am., 571 So. 2d 127, 128 (La. 1990). To "rank the coverages, [courts] must consider the true nature of the . . . policies." Id. at 128. A policy which provides coverage of "all sums which the insured shall become legally obligated to pay" is by its nature primary. Id. at 128-29. In contrast, a policy that "provide[s] extra liability insurance over and above what is covered by the [the insured's] basic policies" is a true excess policy. Id. at 129.

## DISCUSSION

**Insurance 'On the Vehicle'**

Ohio argues that because its Commercial Protector Policy issued to the Cosse Firm does not specifically list the Camry as a covered vehicle, it is not "coverage on the vehicle" under § 1295(c)(i) but "other uninsured motorist coverage available to" the claimants that may only be recovered as excess by the injured party under (c)(ii). Ohio argues that according to this provision, the Hudson policy outranks its policy, and no further inquiry is required into whether the policies are true excess or true primary in character. Hudson disagrees, and argues that all policies that cover a vehicle are "on the vehicle," or statutorily primary, emphasizing that it is undisputed that both the Hudson policy and the Ohio policy cover the Camry.

5

The weight of authority supports the conclusion that an insurance policy need not specifically list the covered vehicle in order to be considered "[t]he uninsured motorist coverage on the vehicle." Numerous cases have found policies that provide coverage to the injured occupant but which do not list the vehicle are statutorily primary, finding them co-primary with policies that do list the vehicle. See, e.g., Capone v. King, 467 So. 2d 574 (La. 5th Cir. 1985); Richardson v. Zurich Amer. Ins. Co., 2018 WL 1409271 (E.D. La. 3/21/2018). Ohio's policy, Hudson's policy, and Ohio's umbrella policy are "on the vehicle" within the meaning of § 22:1295(1)(c)(I).

**Primary-Umbrella Policy Relationship**

Ohio further contends that even if its policy is statutorily primary, Hudson's policy primes Ohio's policy based on the primary-umbrella relationship between the Progressive and the Hudson policy. Ohio argues that in ranking the policies, the court should consider the Progressive policy and the Hudson umbrella as a single policy, because "[a]n umbrella policy is nothing other than a continuation of the coverage provided by the primary policy," citing Gentry v. Meade, 767 So. 2d 60, 63 (La. 4th Cir. 2000), writ denied, 771 So. 2d 85 (La. 2000). However, Gentry is distinguishable from the instant case on several points.

In Gentry, USAA argued that the language of the anti-stacking statute barred an injured passenger from recovering from both a primary UM policy and an umbrella policy. Id. The court disagreed, holding that a primary policy and umbrella coverage essentially provide one coverage. Id. at 62-3. Ohio asks the court to extend this rule to hold that Hudson's policy, which provides umbrella coverage to the Progressive policy, constitutes one insurance tower of coverage, to

6

prime the Ohio insurance coverage. Relying on Gentry, Ohio essentially asks the court to displace the framework set forth by the Supreme Court of Louisiana in Lee for ranking policies available under the exception to the anti-stacking statute, based on a case that did not examine that question.

Gentry was concerned with whether under the anti-stacking rule, the umbrella coverage was available to a claimant at all. Gentry did not address the scenario contemplated and resolved by the Supreme Court in Lee and before the court in the present case. The present case questions how courts should rank policies available to an injured claimant under the exception to the anti-stacking rule. Lee provides clear guidance in this case. The court rejects Ohio's argument that the Progressive and Hudson policies should be considered a single policy for ranking purposes under the anti-stacking exception.

## C. True Excess Policies

Accordingly, the court must determine which of two statutorily co-primary policies, the Ohio policy and the Hudson policy, primes the other, applying the framework set forth by the Supreme Court of Louisiana in Lee. 571 So. 2d 127. The determination is based upon the contractual language in the policies. Id. at 128-29. Further,

> [a] true excess policy is one that provides that the insurer is liable only for the excess above and beyond that which may be collected from the primary insurer. It is customary in such policies to include a requirement for underlying primary insurance for a certain amount and to list such other primary insurance within the excess policy.

Penton v. Hotho, 601 So. 2d 762, 764–65, n. 3 (La. App. 1 Cir.1992).

The Ohio "Commercial Protector" policy provides, in its section entitled "Hired Auto

and Non-Owned Auto Liability" that "the insurance provided . . . applies to 'bodily injury; or 'property damage' arising out of the use of any 'non-owned auto' in your business by any person."[1] The Ohio policy provides, in its section entitled "Louisiana Uninsured Motorists Coverage (Includes Underinsured Motorist) – Bodily Injury" that the insurer "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'"[2] The damages must result from "bodily injury " sustained by the insured caused by an "accident."[3] Ohio is obligated to pay UM benefits "after all . . . liability . . .. polices have been exhausted. . . ." [4]

The language of the policy reflects that it is triggered by the exhaustion of the tortfeasor's liability insurance. It does not require exhaustion of an underlying UM policy. It does not include a requirement for underlying primary insurance for a certain amount or list any other primary insurance. In fact, in Ohio's umbrella policy, the Commercial Protector policy is specifically identified as the underlying (primary) policy.[5] These are characteristics of a true primary policy. Further, the excess "other insurance" clause does not transform the primary policy to an excess policy because it actually possesses the characteristics of a primary policy. See Sherlock v. Ocean Salvage Corp., 785 So. 2d 932, 937 (La. 4th Cir. 2001).

---

[1] Rec. Doc. 6-4 p. 83.

[2] Id. at p. 145.

[3] Id.

[4] Id.

[5] Rec. Doc. 6-5 p. 12.

In contrast, the Hudson "Personal Umbrella Liability Policy" provides that "[t]he company will pay those sums which the insured . . . shall become legally entitled to recover as damages because of bodily injury which is covered by the Uninsured Motorists Insurance . . . of the Automobile Liability policy scheduled in Item 7(b) of the Declarations, less the applicable limits of liability of such Uninsured Motorists Insurance."[6] The policy further provides that "No action shall lie against the Company under Coverage B unless, as a condition precedent thereto: . . . The insurer of the Uninsured Motorists Insurance shall have paid the insured the full amount of its limit of liability."[7] The section entitled "Maintenance of Underlying Insurance" reads "with respect to Coverage B . . . If [uninsured motorists insurance] terminates during the policy period or is uncollectible for any reason, the Excess Uninsured Motorists insurance under this policy does not apply."[8] The section entitled "Schedules" shows the underlying insurance on the Camry, namely the Progressive policy.[9]

Thus, the Hudson policy, an umbrella policy, is not triggered unless an underlying UM policy is exhausted. This is consistent with the Supreme Court of Louisiana's determination that umbrella policies by their nature are true excess policies: "the whole theory of umbrella insurance is that the insured protects himself against catastrophic loss by the procurement of insurance coverage which takes up where his primary policy leaves off. *Thus, umbrella coverage*

---

[6] Rec. Doc. 6-7 p. 7.

[7] Id. at p. 12.

[8] Id.

[9] Id. at p.16.

*is to be regarded as true excess over and above any type of primary coverage.*" Lee, 571 So. 2d at 129, n.3 (internal quotations omitted) (emphasis supplied). Accordingly, the Hudson policy is a true excess policy.

Because the Ohio Commercial Protector policy is primary in nature and the Hudson policy is a true excess policy, Ohio's policy primes Hudson's and Hudson is entitled to partial summary judgment in its favor. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion for Partial Summary Judgment** (Rec. Doc. 6) filed by defendant, Hudson Specialty Ins. Co., is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment** (Rec. Doc. 10) filed by plaintiff, Ohio Security Ins. Co., is **DENIED**.

New Orleans, Louisiana, this 29th day of September, 2021.

_____
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE